## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE **DIVISION**
**CIVIL ACTION NO.** 3:14-CV-00607-GCM-DCK

| | |
|---|---|
| CATLIN SPECIALTY INSURANCE COMPANY, | ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) **ORDER** ) |
| TEGOL, INC. HELMET VENTURE, INC. JAFRUM INTERNATIONAL, INC., | ) ) ) ) |
| **Defendants.** | ) ) ) |

     **THIS MATTER** is before the Court on Plaintiff Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. No. 53), Third Party Defendant Sentinel Insurance Company's Motion for Judgment on the Pleadings (Doc. No. 51), and Third Party Defendant Consolidated Marketing Group Inc.'s Motion for Judgment on the Pleadings (Doc. No. 49). Defendant Jafrum International Inc. has filed its Responses in Opposition (Doc. Nos. 55, 61, 62), and each movant has filed a Reply (Doc. Nos. 58, 63, 64). [1] Accordingly, the parties' motions are ripe for disposition.

     For the following reasons, Plaintiff Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. No. 53) will be **GRANTED**, Third Party Defendant Sentinel Insurance Company's Motion for Judgment on the Pleadings (Doc. No. 51) will be **GRANTED**, and Third Party Defendant Consolidated Marketing Group Inc.'s Motion for Judgment on the Pleadings (Doc. No. 49) will be **GRANTED IN PART AND DENIED IN PART**.

---

[1] On Catlin Specialty Insurance Company's Motion (Doc. No. 29), the Clerk of Court entered an Entry of Default against Defendants Helmet Venture, Inc. and Tegol, Inc. on April 9, 2015 (Doc. No. 31).

# I.    BACKGROUND

Defendant Jafrum International Inc. ("Jafrum") designs, manufactures, and sells motorcycle helmets, clothing, bags, and apparel.  (Compl. at 3, ¶ 17, Doc. No. 1)  Jafrum began using the trademark "REBEL HELMETS" on its products beginning in 2009.  (*Id.* at 4, ¶ 18)  It began the process of registering this mark with the United States Patent and Trademark Office on September 20, 2011.  (*Id.* at 4, ¶ 19)  Around this time, Jafrum learned that one of its competitors, Defendant Helmet Venture, Inc.  ("Helmet Venture") was using the same mark on its motorcycle gear.

On February 21, 2014, Helmet Venture filed a complaint in the United States District Court for the Central District of California.  (*Id.* at 4, ¶ 23)  Helmet Venture's Complaint contained the following claims:  (1) trademark infringement, in violation of § 32 of the Lanham Act; (2) unfair competition and false designation of origin, in violation of § 43(a) of the Lanham Act; (3) federal trademark dilution, in violation of § 43(c) of the Lanham Act; (4) common law and statutory trade name infringement, in violation of California law; (5) unfair competition, in violation of California Business and Professions Code § 17200; (6) common law unfair competition; and (7) trademark dilution, in violation of California Business and Professions Code § 14247.  (Helmet Venture Complaint at 10-14, ¶¶ 27-58, Doc. No. 1-1)  Helmet Venture filed an Amended Complaint on August 21, 2014, asserting the same claims but adding Defendant Tegol, Inc. as a party. [2]  (Doc. No. 1-2)

According to its Amended Complaint (Doc. No. 1-2), Helmet Venture brought suit against Jafrum "for trademark and trade name infringement, and unfair competition arising from

---

[2] On June 10, 2014, Helmet Venture assigned its interest in its REBEL family of trademarks to Tegol, Inc., which has subsequently taken over as the manufacturer and distributor of the contested motorcycle gear.  (Helmet Venture Complaint at ¶ 18, Doc. No. 1-2).  However, because the various filings in this case refer to Hemet Venture, rather than Tegol, this order refers to the adverse party in the underlying action as "Helmet Venture."

[Jafrum's] willful and intentional infringement of [Helmet Venture's] trademarks, as well as its continued efforts to trade on [Helmet Venture's] . . . reputation and goodwill" (*Id.* at ¶ 1). Helmet Venture alleged that it manufactured, distributed, and sold a "REBEL line of motorcycle goods," for which it obtained four U.S. Trademark Registrations.[3] (*Id.* at ¶¶ 2-3) The company claimed to have "used its family of REBEL trademarks to promote and sell" its products as early as 2009, and represented that "these trademarks and the products they are associated with have gained, individually and collectively, a high degree of fame and recognition within the industry." (*Id.* at ¶¶ 9-10)

Helmet Venture further alleged that Jafrum had "undertaken a scheme to illegally trade upon Helmet's reputation, good will, and intellectual property by, inter alia, incorporating the REBEL Mark in the brand name for its line of motorcycle helmets in order to sell the same style and type of helmets sold by Helmet [Venture] to Helmet [Venture's] customer base." (*Id.* at ¶ 20) According to the Complaint, the companies exchanged cease and desist letters, each demanding that the other discontinue all use of the "REBEL" mark on its goods. (*Id.* at ¶¶ 25-26) When negotiations were unsuccessful, Jafrum "file[d] a Petition for Cancellation before the United States Patent and Trademark Office of [Helmet Venture's] REBEL HELMETS trademark registration." (*Id.* at ¶ 28)

The instant dispute arises over whether Jafrum's insurers—Catlin Specialty Insurance Company ("Catlin") and Sentinel Insurance Company ("Sentinel")—had a duty to defend the company during the Helmet Venture litigation. Both insurance polies were procured by Third Party Defendant Consolidated Marketing Group, Inc., doing business as "Charlotte Insurance," which served as the agent and/or broker. (Charlotte Insurance Memorandum in Support at 4,

---

[3] Specifically, Hemet Venture obtained registrations for "REBEL HELMETS," "REBEL," "REBEL MOTORCYCLE BOOTS," and "REBEL ADVANCE MOTORCYCLE GEAR." (Helmet Venture Complaint at ¶3, Doc. No. 1-2)

Doc. No. 50)  Jafrum claims that it specifically requested that the policies include coverage for

trademark infringement.  (Second Amended Third Party Complaint at 4, ¶ 21, Doc. No. 38)

**A. The Catlin Policy**

On February 12, 2010, Catlin issued an insurance policy to Jafrum providing insurance

coverage for, among other things, personal and advertising injury.  (Catlin Memorandum in

Support at 12, Doc. No. 54; Catlin Policy at 17, 21, Doc. No. 1-3)  Under the terms of the policy,

Catlin had "the right and duty to defend the insured against any 'suit' seeking those damages."

(Catlin Policy at 21, Doc. No. 1-3)  The policy defined "personal and advertising injury" in the

following terms:

> 1. "Advertisement" means a notice that is broadcast or published to the general public or
>    specific market segments about your goods, products or services for the purpose of
>    attracting customers or supporters.  For the purposes of this definition:
>    a. Notices that are published include material placed on the Internet or on similar
>       electronic means of communication; and
>    b. Regarding web-sites, only that part of a web-site that is about your goods, products
>       or services for the purposes of attracting customers or supporters is considered an
>       advertisement.
> . . . .
> 14. "Personal and advertising injury" means injury, including consequential "bodily
>     injury", arising out of one or more of the following offenses:
> . . . .
>    d. Oral or written publication, in any manner, of material that slanders or libels a
>       person or organization or disparages a person's or organization's goods or services;
> . . . .
>    f. The use of another's advertising idea in your "advertisement"; or
>    g. infringing upon another's copyright, trade dress, or slogan in your "advertisement".

(Catlin Memorandum in Support at 13-14, Doc. No. 54; Catlin Policy at 28, 30, Doc. No. 1-3)

The Catlin Policy further provided that certain types of personal and advertising injury were not

covered.  (Catlin Policy at 22, Doc. No. 1-3)  Relevant to the instant action, "'[p]ersonal and

advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret, or

other intellectual property rights," was not covered, unless the insured was sued for "infringement, in [its] 'advertisement', of copyright, trade dress, or slogan." (*Id.*)

**B. The Sentinel Policy**

On March 12, 2011, Sentinel issued an insurance policy to Jafrum that provided limited business liability coverage for bodily injury, property damage, and personal and advertising injury. (Sentinel Memorandum in Support at 6, Doc. No. 52; Sentinel Policy at 48, Doc. No. 21-1) In January 2012, Charlotte Insurance renewed the policy on Jafrum's behalf. (Second Amended Third Party Complaint at 5, ¶ 19, Doc. No. 38)

Relevant to the instant dispute, the policy stated that Sentinel would "have the right and duty to defend the insured against any 'suit' seeking damages for . . . 'personal and advertising injury.'" (Sentinel Memorandum in Support at 6, Doc. No. 52; Sentinel Policy at 48, Doc. No. 21-1) "Personal and advertising injury" was defined under the policy in the following terms:

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:
    a. (1) Radio;
       (2) Television;
       (3) Billboard;
       (4) Magazine;
       (5) Newspaper;
    b. The Internet, but only the part of a website that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or
    c. Any other publication that is given widespread public distribution.
However, "advertisement" does not include
    a. The design, printed material, information or images contained in, or upon the packaging or labeling of any goods or products . . . .
2. "Advertising idea" means any idea for an "advertisement".
. . . .
17. "Personal or advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
. . . .
    d. Oral, written, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
. . . .

     *f.* Copying, in your "advertisement" a person's or organization's "advertising idea" or style of "advertisement"

     *g.* Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement". . . .

(Sentinel Memorandum in Support at 8-9, Doc. No. 52; Sentinel Policy at 67, 69-70)

The Sentinel Policy also provided that several "personal and advertising" injuries were excluded from coverage. Specifically, the policy excluded: (1) injuries "arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period" ("the prior publication exclusion"); and (2) injuries "arising out of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark, or other designation of origin or authenticity" ("the intellectual property exclusion"). (Sentinel Memorandum in Support at 7-8, Doc. No. 52; Sentinel Policy at 50, 55, Doc. No. 21-1)

Notably, the intellectual property exclusion contained the following additional language: "this exclusion does not apply to infringement, in your advertisement, of (a) Copyright; (b) Slogan, unless the slogan is also a trademark, trade name, service mark, or other designation of origin or authenticity; or (c) Title of any literary or artistic work." (Sentinel Memorandum in Support at 8, Doc. No. 52; Sentinel Policy at 55, Doc. No. 21-1)

**C. Procedural History**

Catlin filed a one-count Complaint against Jafrum in this Court on October 30, 2014, seeking a declaratory judgment that it was not obligated to defend Jafrum in the Helmet Venture litigation under the terms of its policy. (Doc. No. 1) On November 18, 2014, Jafrum filed an Answer, Third Party Complaint against Sentinel Insurance Company, and Counterclaim against Catlin. (Doc. No. 3) Jafrum's Third Party Complaint also named Charlotte Insurance as a Third

Party Defendant.  Jafrum filed an Amended Third Party Complaint on December 12, 2014, (Doc. No. 15), and a Second Amended Third Party Complaint on September 15, 2015.  (Doc. No. 38)

Jafrum's Counterclaim against Catlin seeks a declaratory judgment that Catlin was obligated to defend Jafrum in the Helmet Venture litigation.  (Jafrum Answer and Counterclaim at 9, Doc. No. 3)  Jafrum's Second Amended Third Party Complaint against Sentinel and Charlotte Insurance seeks a declaratory judgment that Sentinel was also obligated to provide a defense.  (Second Amended Third Party Compl. at 2-4, ¶¶ 5-14, Doc. No. 38)  Additionally, the Second Amended Third Party Complaint includes an unfair and deceptive trade practices claim against Sentinel (*Id.* at 4, ¶¶ 15-17), and claims against Charlotte Insurance for negligence and breach of fiduciary duty (*Id.* at 4-6, ¶¶ 18-29).

On April 18, 2016, Plaintiff and Third Party Defendants filed dispositive motions.  Catlin filed a Motion for Summary Judgment (Doc. No.  53) and Memorandum in Support (Doc. No. 54), requesting that the Court grant summary judgment on its declaratory judgment claim.  Charlotte Insurance filed a Motion for Judgment on the Pleadings (Doc. No. 49) and Memorandum in Support (Doc. No. 50).  Sentinel also filed a Motion for Judgment on the Pleadings (Doc. No. 51) and Memorandum in Support (Doc. No. 52).  Both Third Party Defendants request that this Court dismiss Jafrum's claims against them with prejudice.

Jafrum filed its Responses in Opposition to the dispositive motions on May 4, 2016 (Doc. No. 55) and May 26, 2016 (Doc. Nos. 61, 62).  Charlotte Insurance filed its Reply on May 16 (Doc. No. 58), and Sentinel and Catlin filed Replies on June 8 (Doc. No. 63) and June 9 (Doc. No. 64) respectively.  Accordingly, the parties' motions are ripe for disposition.

## II.     LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Portales Place Prop., LLC v. Guess*, No. 3:08CV143, 2009 WL 112847, at *1 (W.D.N.C. Jan. 15, 2009) (citing *Burbach Broadcasting Co. v. Elins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002)). When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded allegations and view the complaint in the light most favorable to the nonmoving party. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). However, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence" in support of the non-movant's position is not sufficient to establish a genuine dispute. *Id.* at 252. A material fact affects the outcome of the suit under the applicable substantive law. *See id.* at 248. When determining whether a dispute is genuine or a fact is material, courts are required to view the facts and draw reasonable inferences

in the light most favorable to the party opposing the summary judgment motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Unsupported speculation, however, is insufficient to defeat a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## III.    DISCUSSION

### A. Catlin's Motion for Summary Judgment

Catlin argues that it is entitled to summary judgment because its policy terms exempted "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret, or other intellectual property rights," from coverage. (Memorandum in Support at 13, Doc. No. 54) It submits that "[e]very claim in the California lawsuit arises out of allegations that Jafrum committed trademark infringement with respect to the trademark REBEL HELMETS." (*Id.* at 18) By contrast, Jafrum argues that ambiguity in the policy's language, and in Helmet Venture's complaint, require that Catlin provide a defense in the suit. (Response in Opposition at 4-12, Doc. No. 61) In the alternative, it argues that the suit can be construed as one for "slogan" infringement, which is specifically covered by the policy. (*Id.* at 12-13)

Because this Court's jurisdiction is based on diversity of citizenship, North Carolina's substantive law applies. *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005). Under North Carolina law, a reviewing court uses the "comparison test" to determine whether an insurer has the obligation to defend its insured under the terms of the relevant policy. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 610 (N.C. 2010) (citing *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986)). The comparison test requires that the Court read the underlying complaint "side-by-side with the policy to determine whether the events as alleged are covered

or excluded." *Waste Mgmt. of Carolinas, Inc.*, 340 S.E.2d at 377. The insured bears the burden of establishing that a loss is covered, but the insurer bears the burden of showing that a particular exclusion applies. *Erie Ins. Exch. v. First United Methodist Church*, 690 F. Supp. 2d 410, 413 (W.D.N.C. 2010). Provisions that extend coverage to the insured are construed liberally, while exclusions, if ambiguous, are construed against the insurer. *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 412 S.E.2d 318, 321 (N.C. 1992)

In analyzing the extent of coverage, the Court attempts to "arrive at the insurance coverage intended by the parties." *Harleysville Mut. Ins. Co.*, 692 S.E.2d at 612 (quoting *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 172 S.E.2d 518, 522 (N.C. 1970)). For this reason, the Court defers to definitions included in the policy by the parties. *Id.* For undefined, non-technical terms, the Court reads them consistent with "the way they are used in ordinary speech, unless the context clearly requires otherwise." *Id.* (citation omitted). Although any doubt as to whether coverage exists must be resolved in favor of the insured, *Waste Mgmt. of Carolinas, Inc.*, 340 S.E.2d at 377, "language is not ambiguous merely because the parties 'contend for differing meanings to be given,'" *Erie Ins. Exch.*, 690 F. Supp. 2d at 413 (quoting *Allstate Ins. Co. v. Runyon Chatterton*, 518 S.E.2d 814, 816 (N.C. Ct. App. 1999)). Rather, "to be ambiguous, the language of an insurance policy provision must, 'in the opinion of the court, [be] fairly and reasonably susceptible to either of the constructions for which the parties contend.'" *Harleysville Mut. Ins. Co.*, 692 S.E.2d at 612 (quoting *Wachovia*, 172 S.E.2d at 522)).

Thus, the Court begins its analysis with an interpretation of the Catlin Policy's intellectual property exclusion. According to the policy, coverage did not extend to "'[p]ersonal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade

secret, or other intellectual property rights," unless the insured was sued for "infringement, in [its] 'advertisement', of copyright, trade dress, or slogan." (Catlin Policy at 22, Doc. No. 1-3)

It appears to the Court that the Helmet Venture complaint contains only allegations that fall within the exclusion, although it pleads causes of action other than strict trademark infringement. The Court is principally guided in this analysis by the Fourth Circuit's opinion in *Superformance International, Inc. v. Hartford Casualty Insurance*, 332 F.3d 215 (4th Cir. 2003). In *Superformance*, the registrants of trademarks relating to the "Cobra" classic car sued a manufacturer of car kits that purported to replicate the Cobra's design. *Id.* at 217. The manufacturer, which had purchased "personal and advertising injury" insurance coverage, tendered the defense of the litigation to its insurer. *Id.* at 218. The insurer denied coverage citing, among other policy provisions, the intellectual property exclusion exempting suits "arising out of the infringement of a trademark, trade name, service mark or other designation of origin." *Id.* at 218. When the manufacturer sued for breach of contract, the Fourth Circuit found that the pleadings in the underlying litigation only included allegations of trademark infringement. *Id.* at 222. [4]

Importantly, the Court rejected the plaintiff's proffered distinctions between underlying complaint allegations and the exclusion's operative language. Specifically, the plaintiff argued that the complaint contained claims for dilution and trade dress infringement that were "not the same as trademark infringement and therefore . . . not barred by the trademark infringement exclusion." *Id.* at 219. The Court rejected this argument, explaining: "[a]lthough there are, to be sure, different legal avenues available . . . to pursue a trademark claim, at bottom all protect

---

[4] The Fourth Circuit's opinion in *Superformance* applied Virginia law. *Superformance Intern., Inc.*, 332 F.3d at 220. However, as Jafrum argues in its briefs, "the pertinent principles of insurance law are substantially the same in North Carolina." (Response in Opposition at 8 n.4, Doc. No. 61).

the owner of a trademark against loss of, or damage to, his trademark interests." *Id.* at 222. It found that "[a]ll of the claims made in the complaints against Superformance—trademark infringement, trade dress infringement, and trademark dilution, as well as unfair competition based on those violations—are varieties of the trademark claims protected by the Lanham Act and State analogues." *Id.* at 223.

Here, as in *Superformance*, the Helmet Venture complaint does not allege any conduct by Jafrum that can be extricated from its trademark infringement allegations. As the Court will explain, the complaint simply does not indicate that Jafrum engaged in any wrongdoing besides its use of the REBEL HELMETS trademark, and allegations of trademark infringement clearly fall within the language of the policy exclusion. Further, Jafrum's various arguments to the contrary are all unavailing.

### 1. Trade name infringement

First, Jafrum argues that the complaint references "trade name" infringement, which Catlin's intellectual property exclusion does not mention. (Response in Opposition at 8-9, Doc. No. 61) Specifically, the complaint's first paragraph describes the action as one "for trademark and trade name infringement, and unfair competition arising from [Jafrum's] willful and intentional infringement of [Helmet Venture's] trademarks, as well as its continued efforts to trade on [Helmet Venture's] . . . reputation and goodwill." (Helmet Venture Complaint at ¶ 1, Doc. No. 1-2) Additionally, Helmet Venture's Fourth Claim for Relief alleges common law and statutory trade name infringement, in violation of California law. (*Id.* at ¶ 47-51)

However, by including a claim for trade name infringement, Helmet Venture simply used a "different legal avenue[]" available for protecting its trademark interest in the REBEL marks. *See Superformance Intern., Inc.*, 332 F.3d at 222. And as Catlin points out, the facts in the

Helmet Venture complaint allege only that Jafrum infringed the REBEL HELMET trademark. (Catlin Reply at 7, Doc. No. 64)  Indeed, Jafrum fails to identify any conduct in the complaint, or legal claim, that can be separated from the allegations of trademark infringement.  Accordingly, as the Fourth Circuit explained in *Superformance*, Helmet Venture's decision to alternatively plead trade name infringement in its attempt to obtain relief is not dispositive.

Similarly, any definitional differences that may in some circumstances exist between trade names and trademarks are not implicated in this case, because the only arguable trade name that appears in the complaint is the REBEL trademark.  *See Harleysville Mut. Ins. Co.*, 692 S.E.2d at 611 ("[T]he question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury").  Thus, the fact that the Helmet Venture complaint alleges trade name infringement does not support Jafrum's claim for coverage.

### 2. Slogan Infringement

Jafrum next argues that the Helmet Venture allegations fall within the policy's explicit coverage of "slogan infringement."  (Response in Opposition at 12-13, Doc. No. 61)  It argues that the policy failed to define "slogan," and thus that term must be broadly defined.  (*Id.* at 12)  Moreover, the Fourth Circuit has explained that a slogan may, under some circumstances, "serve as a trademark."  *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 342 (4th Cir. 2001) (citing 1 J. Thomas McCarthy on Trademarks and Unfair Competition § 7:20 (4th ed. 2000)).

Again, this argument misses the mark.  The question before the Court is not whether the Catlin Policy would provide coverage in the event that Jafrum were sued for infringing a trademarked slogan, but rather whether the REBEL HELMETS trademark constitutes a slogan.

While it is true that the Court gives the term "slogan" its ordinary meaning, that meaning cannot be construed to include the phrase REBEL HELMETS. If the term "slogan" is afforded its ordinary usage, it means "a phrase expressing the aims or nature of an enterprise, and organization, or a candidate; a motto," or "a phrase used repeatedly, as in advertising or promotion." *Slogan*, The American Heritage Dictionary of English Language (3d. ed.1992); *see also* 1 McCarthy on Trademarks § 7:19 ("A 'slogan' is usually defined as an advertising phrase which accompanies other marks such as house marks and product line marks."). Here, REBEL HELMETS is not a motto about Helmet Venture's product, or a short phrase repeatedly used for its advertising purposes, but a mark that designates a particular brand of Helmet Venture products.

Moreover, federal trademark law, which provides a background against which the contract operates, distinguishes between slogans and brand names. It is well-established that "'trademarked slogans' are phrases used to promote or advertise a house mark or product mark, in contradistinction to the house or product mark itself." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 619 (2d Cir. 2001); *accord. Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 556-57 (6th Cir. 2003). Indeed, this distinction makes sense. If courts were "to say that the trademarked name of a brand, product, or company constitutes a 'trademarked slogan' merely because it 'remind[s] the consumer of the brand,' . . . all house, product, or brand names would qualify as slogans." *Hugo Boss*, 252 F.3d at 619. For these reasons, it is apparent that the Helmet Venture complaint does not contain claims for slogan infringement.

### 3. "Unfair competition"

Finally, Jafrum argues that the Helmet Venture complaint contains allegations of unfair competition that are factually distinguishable from its claims of trademark infringement.

(Response in Opposition at 9-12, Doc. No. 61)  However, the facts section of the Helmet Venture complaint gives only one reason for its claims that Jafrum's behavior was unfair.  Namely, Jafrum engaged in "a scheme to illegally trade upon [Helmet Venture's] reputation, goodwill, and intellectual property by, inter alia, incorporating the REBEL Mark in the brand name for its line of motorcycle helmets."  (Helmet Venture Complaint ¶ 20, Doc. No. 1-2)  Accordingly, in its claim for Federal Unfair Competition, the Complaint alleges "[Jafrum's] unlawful copying and use of the REBEL Marks in connection with its clothing products and trade name constitute false and misleading designations of origin and false and misleading representations of facts."  (*Id.* at ¶ 38)  In short, the allegations of unfair competition are coextensive with allegations of trademark infringement.

Jafrum focuses on the complaint's claim for unfair competition in violation of California Business and Professions Code § 17200, emphasizing that the paragraphs in that count do not contain the word "trademark."  (Response in Opposition at 9, Doc. No. 61)  However, Helmet Venture's use of the general term "misconduct" to summarize the factual allegations does not change the fact that complained-of conduct is still Jafrum's alleged trademark infringement.  *See Citizens Ins. Co. of Am. v. Uncommon, LLC*, 812 F. Supp. 2d 905, 911 (N.D. Ill. 2011) ("[T]he IP exclusion applies if the underlying claim, regardless of the legal theory under which it is styled, could not proceed independently of an allegation of trademark infringement.").  Moreover, the Court's interpretation is consistent with the Fourth Circuit's analysis in *Superformance*, in which it classified "[a]ll of the claims made in the complaints"—including trademark infringement, trade dress infringement, and trademark dilution, *as well as unfair competition* based on those violations—as "varieties of trademark claims protected by the Lanham Act and State analogues."  *Id.* (emphasis added).  Because the Helmet Venture

complaint presents the same circumstance, the unfair competitions claims therein do not trigger a duty to defend.

### B. Sentinel's Motion for Judgment on the Pleadings

Sentinel argues that two exclusions in its policy establish that it had no duty to defend Jafrum in the Helmet Venture Complaint. First, Sentinel points to its intellectual property exclusion, which disclaims coverage for injuries "arising out of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark, or other designation of origin or authenticity." (Sentinel Policy at 50, 55, Doc. No. 21-1) This language, which is broader than the Catlin Policy's similar exclusion, applies to the allegations in the Helmet Venture complaint. Jafrum's counterarguments, for the most part, reiterate its arguments in opposition to Catlin's Motion, and are unavailing for the same reasons.[5]

One contention, however, is unique to the Sentinel Policy. Specifically, Jafrum claims that the policy provides coverage in the event that the insured is sued for infringement of "Title of any literary or artistic work." (Response in Opposition at 8-9, Doc. No. 62) This argument is frivolous. There is simply no basis for concluding that the REBEL HELMET mark has ever been used as the title of a literary or artistic work. Thus, the intellectual property exclusion applies to Helmet Venture's complaint, and Sentinel was not required to provide a defense in the ensuing litigation.[6]

---

[5] For example, Jafrum argues that Helmet Venture's allegations can be construed as claims for slogan infringement (Response in Opposition at 10-11, Doc. No. 62), that the unfair competition claims fall outside the intellectual property exclusion (*id.* at 9-10), and that the complaint contains facts extricable from its central trademark infringement assertion (*id.* at 6-8).

[6] Because the intellectual property exclusion applies, the Court need not consider Sentinel's argument that the prior publication exclusion also bars coverage.

### C. Charlotte Insurance's Motion for Judgment on the Pleadings

Jafrum alleges in its Second Amended Third Party Complaint that at the times it purchased the Catlin and Sentinel Policies, it informed its agent, Charlotte Insurance, that it required insurance coverage for trademark infringement. (Second Amended Third Party Complaint at 4, ¶ 21, Doc. No. 38) Jafrum further alleges that Charlotte Insurance provided a list of exclusions in the Catlin Policy and omitted the intellectual property exclusion from that list. (*Id.* at 4, ¶ 22) Jafrum argues that, if this Court finds that the Catlin and Sentinel policies did not require the insurers to provide coverage during the Helmet Venture suit, Charlotte Insurance should be held liable for negligence and breach of fiduciary duty. (*Id.* at 4-5, ¶¶ 24, 29) Charlotte Insurance, by contrast, argues that Jafrum's claims are barred by the applicable statute of limitations. (Memorandum in Support, Doc. No. 50)

### 1. Jafrum's Negligence Claim

Jafrum's negligence claim is governed by the three year statute of limitations set forth in N.C. Gen. Stat. § 1-52(5). *White v. Consolidated Planning, Inc.*, 603 S.E.2d 147, 164 (N.C. Ct. App. 2004). "A cause of action for negligence begins to accrue when the wrong giving rise to the right to bring suit is committed, even if the damages at that time are nominal and the injuries cannot be discovered until a later date." *Birtha v. Stonemor, North Carolina, LLC*, 727 S.E.2d 1, 7 (N.C. Ct. App. 2012).

Here, the alleged wrong giving rise to the right to bring the negligence claim is Charlotte Insurance's failure to procure the requested trademark infringement insurance coverage, but the parties disagree about the correct accrual date. Jafrum alleges that the most recent instance of Charlotte Insurance's negligent failure to procure the appropriate coverage occurred on March 12, 2012, when it obtained a second Sentinel Policy on Jafrum's behalf. (Response in

Opposition at 7, Doc. No. 55; *see* Second Amended Third Party Complaint at 5, ¶ 19, Doc. No. 38)  Charlotte Insurance argues that the Court should look only to the dates on which it procured the first Catlin and Sentinel Policies.  (Memorandum in Support at 5-7, Doc. No. 50)  Jafrum apparently concedes that these dates fall outside the three-year limitations period.  (Response in Opposition at 7, Doc. No. 55)

At the Motion for Judgment on the Pleadings stage, the Court must construe the facts in the Complaint in the light most favorable to the non-moving party.  Here, Jafrum alleges that it insisted on trademark infringement coverage and the Charlotte Insurance negligently failed to procure it.  Jafrum further claims that such negligence occurred on at least one instance that falls outside the applicable three-year limitations period.  Accordingly, the Court will grant Charlotte Insurance's Motion to the extent it pertains to the first Catlin and Sentinel Policies, but deny the Motion as to the subsequent Sentinel Policy, procured on March 12, 2012.

**2. Jafrum's Breach of Fiduciary Duty Claim**

"Allegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1)."  *Shallotte Partners, LLC v. Berkadia Commercial Mortg., LLC*, 2015 WL 4081963, at *11 (N.C. Ct. App. July 7, 2015) (quoting *Toomer v. Branch Banking & Trust Co.*, 614 S.E.2d 328, 335 (N.C. Ct. App. 2005)).  However, Jafrum and Charlotte Insurance again disagree about the correct accrual date.  The North Carolina Supreme Court apparently has not opined on whether breach of fiduciary duty claims begin to accrue at the time of the breach or when it is discovered.  Thus, this Court must "predict how that court would rule if presented with the issue."  *Private Mortgage Inv. Servs., Inc. v. Hotel & Club Associates, Inc.*, 296 F.3d 308, 312 (4th Cir. 2002).  In making its determination, the "Court of Appeals' decisions, as the

state's intermediate appellate court, 'constitute the next best indicia of what state law is.'" *Id.* (quoting *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992)).

When considering this issue, the North Carolina Courts of Appeals have frequently determined that "[b]reach of fiduciary duty claims accrue upon the date when the breach is discovered and are subject to a three year statute of limitations." *Trillium Ridge Condo. Assoc., Inc. v. Trillium Links & Village LLC*, 764 S.E.2d 203, 219 (N.C. Ct. App. 2014) (citing *Toomer*, 614 S.E.2d at 335); *Dawn v. Dawn*, 470 S.E.2d 341, 343 (N.C. Ct. App. 1996); *Shallotte Partners,* 2015 WL 4081963, at *11. Federal district courts in North Carolina have also taken this position. *See Hetzel v. JPMorgan Chase Bank, N.A.*, 2014 WL 7336863, at*3 (E.D.N.C. December 22, 2014) (citing *Pittman v. Barker*, 452 S.E.2d 326, 332 (N.C. Ct. App. 1995)) ("Discovery of the breach accrues when the claimant knew or, by due diligence, should have known of the facts constituting the basis for the claim.").

Charlotte Insurance argues that these cases are distinguishable because they do not involve the insurance agent-client fiduciary relationship. (Reply at 3-4, Doc. No. 58) However, it appears to the Court that the same principles would apply in the insurance agent context, and Charlotte Insurance has failed to provide persuasive legal or policy grounds for extending different treatment to this particular relationship. Indeed, the North Carolina Courts of Appeals have reviewed several claims of breach of fiduciary duty brought against insurance agents. And in each instance, the court considered when the client ought to have been aware by reasonable diligent discovery that the agent had breached his duty. *See State Farm & Casualty Co. v. Darsie*, 589 S.E.2d 391, 549 (N.C. Ct. App. 2003); *Piles v. Allstate Ins. Co.*, 653 S.E.2d 181, 185 (N.C. Ct. App. 2007). Charlotte Insurance argues that these cases are distinguishable because the breach of fiduciary duty arguably rose to the level of fraud. However, in *Piles v. Allstate*

*Insurance Co.*, the court separately considered the claims of fraud and breach of fiduciary duty, and determined that "[t]he breach of fiduciary duty claims *also* accrued when [the plaintiff] allegedly discovered that her policy did not include [the sought after] coverage." 653 S.E.2d at 186 (emphasis added).

Thus, this Court finds that Jafrum's claims for breach of fiduciary duty began to accrue when it discovered, or ought to have discovered, through reasonable diligence that its insurance policies did not include coverage for trademark infringement. This question is fact bound, and thus inappropriate for resolution on a motion for judgment on the pleadings. *See Piles*, 653 S.E.2d. at 184. Accordingly, Charlotte Insurance's Motion will be denied as to Jafrum's breach of fiduciary duty claim.

## IV.    CONCLUSION

Both the Catlin and Sentinel policies explicitly provided that trademark infringement disputes were excluded from coverage. Because the Helmet Venture complaint contains no allegations distinct from its trademark infringement claims, neither insurer was obligated to defend Jafrum in the underlying lawsuit. Accordingly, their motions will be granted. By contrast, Jafrum's claims against Charlotte Insurance are not entirely barred by the statute of limitations. Thus, Charlotte Insurance's Motion for Judgment on the Pleadings will be granted in part and denied in part.

## ORDER

For the foregoing reasons, Plaintiff Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. No. 53) will be **GRANTED**, Third Party Defendant Sentinel Insurance Company's Motion for Judgment on the Pleadings (Doc. No. 51) will be **GRANTED**, and Third Party Defendant Consolidate Marketing Group Inc.'s Motion for Judgment on the Pleadings (Doc.

No. 49) will be **GRANTED IN PART AND DENIED IN PART**.  Jafrum will be permitted to proceed on its negligence claim regarding procurement of the 2012 Sentinel Policy and its breach of fiduciary duty claims.

      **SO ORDERED.**

Signed: January 19, 2017

Graham C. Mullen
United States District Judge