# EXHIBIT H

| | | |
|---|---|---|
| CATLIN SPECIALTY INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:14-cv-607 |
| v. | ) ) | |
| JAFRUM INTERNATIONAL, INC., HELMET VENTURE, INC., and TEGOL, INC., | ) ) ) ) | |
| Defendants. | ) ) | |
| JAFRUM INTERNATIONAL, INC., | ) ) | |
| Counterclaim Plaintiff, | ) ) | **DECLARATION OF R. BRYAN TILDEN** |
| v. | ) ) | |
| CATLIN SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Counterclaim Defendant. | ) ) | |
| JAFRUM INTERNATIONAL, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| SENTINEL INSURANCE COMPANY and CONSOLIDATED MARKETING GROUP, INC. d/b/a CHARLOTTE INSURANCE, | ) ) ) ) ) | |
| Third-Party Defendants. | ) ) | |

Pursuant to 28 U.S.C. § 1746, I, R. Bryan Tilden, hereby state and declare under penalty of perjury as follows:

1.    I am over the age of 18 and I am fully competent to give testimony. I have personal knowledge of all the matters stated in this Declaration, and all statements made are true and correct.

1

PPAB 4107556v1

2.      I am a Charterd Property Casualty Underwriter, Certified Insurance Counselor and a licensed Property and Liability Insurance Agent in North Carolina.  Third-Party Defendant Consolidated Marketing Group, Inc. d/b/a Charlotte Insurance retained and identified me in the above-captioned matter as an expert witness in the insurance and risk management industry.

3.      My particular qualifications and the opinions I hold in this matter are set forth in my December 29, 2017 Written Report, which is attached as Exhibit 1 hereto and is incorporated herein by reference as if fully set forth.

Executed this 9th day of February, 2018.

_R. Bryan Tilden_
R. Bryan Tilden

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CATLIN SPECIALTY INSURANCE COMPANY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:14-cv-607 |
| | ) |
| JAFRUM INTERNATIONAL, INC., HELMET VENTURE, INC., and TEGOL, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| JAFRUM INTERNATIONAL, INC., Counterclaim Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CATLIN SPECIALTY INSURANCE COMPANY, Counterclaim Defendant. | ) |
| | ) |
| JAFRUM INTERNATIONAL, INC., Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SENTINEL INSURANCE COMPANY and CONSOLIDATED MARKETING GROUP, INC., d/b/a CHARLOTTE INSURANCE, Third-Party Defendants. | ) |

Prepared by R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
December 29, 2017

1

# PREFACE

I, R. Bryan Tilden, have been engaged by counsel for Consolidated Marketing Group, Inc., d/b/a Charlotte Insurance ("Charlotte Insurance") to review certain materials related to the procurement of certain policies of insurance that were issued to Jafrum International, Inc. ("Jafrum"). In summary, this report provides opinions relating to the actions related to the procurement of the policies, all as described in detail in this report.

I have over 44 years' experience in the insurance and risk management industry as an author, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner and consultant for both insureds and insurers. I have placed business, as a retail and surplus lines broker representing insureds, in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British and European insurance companies. I have handled claims, progressing from small claims to claims over $1,000,000. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian and European companies in the drafting, underwriting and placement of insurance policies, both marine and non-marine, and in the procurement of policies and adjustment of property and liability losses, including intellectual property policies. I teach the construction, drafting, underwriting, adjusting and analysis of commercial liability policies throughout the United States, Canada, the Caribbean, Bermuda and the European Union. I have testified in the United States and London regarding the above subject matter. I am familiar with the custom and practices of the international insurance marketplace, including the London, European, Caribbean, Canadian, Bermudian and United States markets.

My curriculum vitae is attached hereto as Exhibit A. The facts and data I considered in forming my opinions expressed in this report are listed in the "Documents Provided" section of

2

this report. My billing rate to Charlotte Insurance for study and testimony in this matter is $375 an hour and $300 an hour for any travel.[1] These are my opinions to a reasonable degree of professional certainty.

## DOCUMENTS PROVIDED

1. *Helmet Venture, Inc., v. Jafrum International,* ("Trademark Complaint"), filed 02/21/14;

2. *Catlin Specialty Insurance Company vs. Jafrum International Inc., Helmet Venture, Inc., and Tegol, Inc.* ("Declaratory Judgment"), filed 10/30/14;

3. Jafrum International, Inc., Answer, Counterclaim And Third-Party Complaint, filed November 18, 2014;

4. Jafrum International Inc.'s Second Amended Third-Party Complaint;

5. Charlotte Insurance Initial and Supplemental Production, Bates CI000001 – CI000571;

6. Jafrum Initial and Supplemental Production Bates JAFRUM_000001 – JAFRUM_000650, including 10 Outlook Items;

7. Deposition of Jaffer Sait Mohammed including exhibits; and

8. Deposition of Marcos Keller including exhibits.

---

[1] No portion of my compensation is dependent upon the result of this litigation.

3

# BACKGROUND

Charlotte Insurance is an independent agent and broker.[2] An independent agency is a business, operated for the benefit of its owner, that sells insurance, usually as a representative of several unrelated insurers. An insurance broker[3] is an independent business owner or firm that sells insurance by representing customers rather than insurers. Brokers shop among insurers to find the best coverage and value for their customers. Because they are not legal representatives of the insurer, brokers are not likely to have authority to commit an insurer to write a policy by binding coverage, unlike agents, who generally have binding authority.

Jafrum began its business in 2003.[4] It sells motorcycle gear such as apparel, helmets, and jackets.[5] It does not have its own factory, but goes to factories for production.[6] It has a small showroom and warehouse in Charlotte.[7] Mr. Jaffer Mohammed is the President and CEO of Jafrum and handled all of its insurance matters.[8] If Jafrum had questions related to coverage, Mr. Mohammed would contact the insurance agent.[9] Mr. Mohammed scanned, but did not read completely, Jafrum's insurance policies upon receipt.[10] He looked at what was excluded.[11] At the start of the business Jafrum was insured with State Farm.[12] Jafrum was paying $2,000 - $2,300 for its insurance with State Farm.[13] State Farm policy 93-KF-2997-0 was effective February 13,

---

[2] https://www.charlotteinsurance.com/, accessed December 19, 2017.
[3] See NCGS 58-33-10(3).
[4] Deposition of Jaffer Mohammed, 22:11 – 13.
[5] Deposition of Jaffer Mohammed, 22:21 – 22.
[6] Deposition of Jaffer Mohammed, 23:21 – 23.
[7] Deposition of Jaffer Mohammed, 24:7 – 9.
[8] Deposition of Jaffer Mohammed, 27:22 – 25; 33:18 – 20.
[9] 30(b)(6) Deposition of Jaffer Mohammed, 86:4 – 6; 87:9 – 11.
[10] 30(b)(6) Deposition of Jaffer Mohammed, 83:22 – 84:1; 84:14 – 17; 87:9 – 12; 97:16 – 20.
[11] 30(b)(6) Deposition of Jaffer Mohammed, 89:7 – 12.
[12] Deposition of Jaffer Mohammed, 39:19 – 22.
[13] Deposition of Jaffer Mohammed, 41:4 – 5; 56:17 - 18.

4

2009 to February 13, 2010, with a premium of $2,584.[14] State Farm defended Jafrum from a helmet lawsuit resulting from an accident, which was the insurance Mr. Mohammed needed.[15] State Farm non-renewed Jafrum because of the helmet lawsuit and other claims.[16]

Mr. Mohammed contacted Charlotte Insurance and Markos Keller was assigned to the Jafrum insurance account.[17] The first meeting with Charlotte Insurance was in September, 2009.[18] There were phone calls and in-person meetings between Mr. Mohammed and Mr. Keller.[19] Mr. Keller went to Jafrum's office four or five times between 2009 and 2012, and at least one of those meetings was for Mr. Keller to pick up the premium check for Jafrum's workers' compensation insurance.[20] After the initial policy was issued, they met for renewal purposes, but Mr. Mohammed could not remember how many times. It was not a lot.[21]

Mr. Mohammed asked Mr. Keller for the exclusions in the proposed policy.[22] On October 13, 2009, in response to a request, Mr. Keller sent Jafrum by email a copy of what was excluded and included.[23] The request was probably received during a phone call.[24] By email dated December 15, 2009, Mr. Keller responded to Mr. Mohammed's request to add additional

[14] Jaffer Mohammed Deposition Exhibit 3.
[15] Deposition of Jaffer Mohammed, 40:5 – 15.
[16] Deposition of Jaffer Mohammed, 40:22 – 23; 64:16 – 20; 30(b)(6) Deposition of Jaffer Mohammed, 87:21 – 24; 94:4 - 9
[17] Deposition of Jaffer Mohammed, 41:14 – 17.
[18] 30(b)(6) Deposition of Jaffer Mohammed, 99:3 – 6.
[19] Deposition of Jaffer Mohammed, 41:22 – 23.
[20] Deposition of Jaffer Mohammed, 50:5 – 11; 52:25 – 53:9.
[21] Deposition of Jaffer Mohammed, 51:21 – 23; 52:25 – 53:9.
[22] 30(b)(6) Deposition of Jaffer Mohammed, 89:19 – 20.
[23] JAFRUM_000002 – JAFRUM_00003; 30(b)(6) Deposition of Jaffer Mohammed, 95:16 – 21; Deposition of Marcos Keller, 15:11 – 15.
[24] Deposition of Marcos Keller, 10:22 – 24.

coverages to the quotation.[25]  Before February 2010 Mr. Keller brought Marty Karriker to meet with Jafrum.[26]

By email dated February 2, 2010, Mr. Mohammed advised Mr. Keller that he had Jafrum's insurance with State Farm.[27]  Mr. Mohammed explained the claims experienced under the State Farm coverage and that he needed subsequent coverage for the same types of claims.[28]  Mr. Mohammed advised Mr. Keller that State Farm was defending Jafrum in litigation from Amcor, who owned the Gorilla Cycle trademark.[29]  It appears, based on the testimony, that the Amcor litigation involved a linking claim.[30]  Linking is an internet activity which includes the placing of Web site links, among other activities.

During his deposition, Mr. Mohammed also identified additional legal issues with 3M[31] and Brando.[32]  In 2008, 3M threatened to sue Jafrum based on an allegation that jackets supplied to Jafrum for retail sale were counterfeit.[33]  By email dated 25 September, 2009, underwriters wanted to ascertain if there was a procedure change to prevent this type of claim in the future, such as a confirmation that the suppliers have a license to sell the product.[34]  The Brando claim arose from the estate of Marlin Brando from the use of his name.[35]  Jafrum's attorney handled the Brando

---

[25] CI000088.
[26] Deposition of Jaffer Mohammed, 55:7 – 12; 63:5 – 6.
[27] CI000100 – CI000101.
[28] Deposition of Jaffer Mohammed, 42:19 – 23; 61:23 – 25.
[29] CI000100 – CI000101; Deposition of Jaffer Mohammed, 39:24 – 25.
[30] 30(b)(6) Deposition of Jaffer Mohammed, 105:21 – 24.
[31] Deposition of Jaffer Mohammed, 39:24.
[32] Deposition of Jaffer Mohammed, 40:3 – 4.
[33] Plaintiff's Answer to Interrogatory No. 3; 30(b)(6) Deposition of Jaffer Mohammed, 101:3 – 18.
[34] JAFRUM_000001.
[35] 30(b)(6) Deposition of Jaffer Mohammed, 103:23 – 104:3.

matter, not an insurance company.[36] The Amcor (linking) claim and the 3M (counterfeit jacket) claim will be discussed later in this report.

The original policy was issued by Catlin Specialty Insurance Company, and procured through Jackson Sumner & Associates.[37] Jackson Sumner & Associates is a managing general agent ("MGA"). MGAs, also referred to as managing general underwriters ("MGUs"), serve as intermediaries between insurers and the agents and brokers who sell insurance directly to the customer, similar to wholesalers in the marketing system for tangible goods. The exact duties and responsibilities of an MGA depend on its contracts with the insurers it represents. MGAs can represent a single insurer, although they more commonly represent several insurers. Some MGAs deal only with brokers and risks within their contractual jurisdiction. That jurisdiction can be specified in terms of geographic boundaries, types of insurance, or both.

The original policy procured on Jafrum's behalf by Charlotte Insurance was the Catlin Policy # 3200300210, effective February 10, 2010 to February 10, 2011.[38] The premium was $8,101.85.[39] It included the Commercial General Liability Coverage Form, CG 00 01 12 04.[40] Page 6 of 15 of the Catlin policy set forth the exclusions for (i.) Infringement Of Copyright, Patent, Trademark Or Trade Secret and (j.) Insureds In Media And Internet Type Business.[41] Jafrum denies receiving the policy prior to the filing of the captioned lawsuit.[42] Charlotte Insurance would have mailed Jafrum a copy of the policy after receipt from Jackson Sumner.[43]

---

[36] 30(b)(6) Deposition of Jaffer Mohammed, 104:16 – 18.
[37] Jaffer Mohammed Deposition Exhibit 7.
[38] JAFRUM_000104.
[39] JAFRUM_000104.
[40] JAFRUM_000110.
[41] JAFRUM_000115.
[42] 30(b)(6) Deposition of Jaffer Mohammed, 116:4 – 11.
[43] Deposition of Marcos Keller, 20:12 – 19.

7

Catlin non-renewed because they would not cover motorcycle helmets.[44] Standard markets were unwilling to consider the account because of the motorcycle helmet exposure.[45] By email dated February 10, 2011, Mr. Keller discussed products liability on motorcycle helmets.[46] Jafrum responded that they did not want to change coverage, and wanted the same coverage with Catlin.[47] Catlin would not provide products coverage for helmets; Evanston provided a quote for $26,500 for products liability coverage.[48] Jafrum also dealt with Jordan Insurance Agency concerning obtaining a quotation for products liability coverage.[49] Jafrum does not recall if trademark infringement coverage was discussed with Jordan Insurance Agency.[50] Catlin extended their policy for 30 days to allow time to find renewal coverage.[51]

Jafrum continually sought premium reductions for its program.[52] In a February 21, 2011 email, Mr. Mohammed informed Mr. Keller that Jafrum could not afford an annual policy premium higher than $5,000 to $6,000. This was in response to Mr. Keller quoting the Evanston products liability coverage for Jafrum's helmets which would have cost over $25,000 for the year.[53] Subsequent to the Catlin policy, Mr. Keller for Jafrum procured a quotation through Hartford for the 2011 to 2012-time frame.[54] The manufacturer of the helmets would provide insurance for Jafrum as an additional insured.[55] Ultimately, Sentinel Insurance Company ("Hartford") provided

---

[44] 30(b)(6) Deposition of Jaffer Mohammed, 129:14 – 15.
[45] Deposition of Marcos Keller, 12:16 – 21.
[46] JAFRUM_000578.
[47] 30(b)(6) Deposition of Jaffer Mohammed, 136:6 – 7; CI000364.
[48] 30(b)(6) Deposition of Jaffer Mohammed, 139:10 – 140:6; CI000223 – CI000224.
[49] 30(b)(6) Deposition of Jaffer Mohammed, 92:12 – 18.
[50] 30(b)(6) Deposition of Jaffer Mohammed, 93:8 – 13.
[51] CI000275.
[52] 30(b)(6) Deposition of Jaffer Mohammed, 80:20 – 22.
[53] CI000223 – CI000224.
[54] 30(b)(6) Deposition of Jaffer Mohammed, 128:21 – 129:1.
[55] 30(b)(6) Deposition of Jaffer Mohammed, 141:14 – 17; CI000223 – CI000224.

Policy 22SBAIU5025 effective March 12, 2011.[56] The premium was $6,591.[57] The Business

Liability was Form SS 00 08 04 05, and in many respects, other than the matters in this litigation,

provided more coverage than the State Farm or Catlin policies.[58] It was also broader in that it

provided business income coverage for web sites.[59] There was an endorsement amending

exclusions and definition – personal and advertising injury on the 2011, 2012 and 2013 policies.[60]

This policy was mailed to Jafrum on March 21, 2011.[61] The Hartford policy was renewed for the

2012 to 2013 term, and mailed to Jafrum on January 30, 2012.[62] The premium for that term was

$7,027.[63]

There was also excess coverage with Hartford in the amount of $4,000,000 each

occurrence, subject to a $10,000 self-insured retention.[64] It contained the following form

endorsement as respects personal and advertising injury. It stated:

> "Exclusion **B.4 (Section I – Coverages)** is replaced by the following:
> **4. Personal and Advertising Injury**
>
> This policy does not apply to "personal and advertising injury".
>
> **EXCEPTION**
> This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this policy apply to any claim or "suit" to which "underlying insurance" does not apply. Any coverage restored by this EXCEPTION applies only to the extent that such

---

[56] CI000532; Jafrum International, Inc.'s Answer, Counterclaim and Third-Party Complaint, Exhibits D and E.
[57] CI000215 – CI000217; CI000404 – CI000411; CI000434.
[58] As examples: Non-Owned Watercraft JAFRUM_000337; Who Is An Insured JAFRUM_000342 – JAFRUM_000344; and Optional Additional Insured Coverages JAFRUM_000349 – JAFRUM_000351.
[59] JAFRUM_000366.
[60] Jafrum International, Inc.'s Answer, Counterclaim and Third-Party Complaint, Exhibit E, Document 3-6, Page 2 of 3 (2011 policy); JAFRUM_000567 (2012 policy); JAFRUM_000397 (2013 policy).
[61] CI000532; JAFRUM_000455.
[62] JAFRUM_000456.
[63] JAFRUM_000553.
[64] JAFRUM+000422.

coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies."[65]

Pamela Kelly handled the account after Mr. Keller.[66] The transfer was after the workers compensation audit additional premium.[67] Sean Hertel of Charlotte Insurance responded to Mr. Mohammed's request for a different customer service representative.[68]

Mr. Mohammed received information that the personal and advertising injury coverage was being revised.[69] This information came from a document referred to in the insurance industry as an explanatory memorandum, which explained to Jafrum that there was no coverage for violation of intellectual property rights under the Hartford policy.[70] Ms. Kelly responded to a Jafrum email on March 14, 2012, and advised that Jafrum consult with an attorney concerning the effect of the memorandum.[71] Even though Jafrum requested a contact for an attorney who practiced in the insurance area, Jafrum did not follow Ms. Kelly's advice to consult with an attorney concerning the policy revision.[72]

### *Intellectual Property Exclusions*

All three of the policies, State Farm, Catlin, and Hartford were copyright Insurance Services Office, Inc. ("ISO") or included material that was copyrighted by ISO. A comparison of the different exclusions is possible and follows.

---

[65] JAFRUM_000444.
[66] Deposition of Jaffer Mohammed, 49:16 – 22.
[67] Deposition of Jaffer Mohammed, 53:20 – 22.
[68] Deposition of Jaffer Mohammed, 57:15 – 25.
[69] Deposition of Jaffer Mohammed, 58:13 – 15.
[70] JAFRUM_000549.
[71] JAFRUM_000481 – JAFRUM_000482.
[72] 30(b)(6) Deposition of Jaffer Mohammed, 154:9 – 20; JAFRUM_000480 – JAFRUM_000481.

The first pertinent exclusion deals with ***Infringement of Copyright, Patent, Trademark or Trade Secret***. Prior to 1998, advertising injury included "infringement of copyright, title or slogan". This definition was significantly revised to "infringing upon another's copyright, trade dress or slogan in your 'advertisement'."[73] Concurrently, the exclusion was also revised to exclude infringement of copyright, etc. It was last revised by the insurance industry in 2001. This revision was to address the dispute between insureds and insurers on the applicability of personal and advertising injury coverage to intellectual property claims. All three policies had substantially similar "infringement of copyright, patent, trademark or trade secret" exclusions.

**State Farm**, on Endorsement FE-6656, stated:

> "Under **BUSINESS LIABILITY EXCLUSIONS**, items 9., 16. and 17. Are replaced with the following:
>
> * * * * *
>
> 17. to **advertising injury** arising out of:
>
> * * * * *
>
> > d. the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
> >
> > However, this exclusion does not apply to infringement, in your **advertisement**, of copyright, trade dress or slogan."[74]

The **Catlin** exclusion stated:

> "**2. Exclusions**
>
> This insurance does not apply to:
>
> > i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

---

[73] Commercial General Liability Forms Filing GL-97-097FR.
[74] Jaffer Mohammed Deposition Exhibit #3 (Page 28 of 231, exhibits).

11

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan."[75]

The **Hartford** Policies stated:

"**A.** Subparagraph 1.p.(7), (8), (15) of Paragraph **2.**, of Section B. **Exclusions** is deleted an [sic] replaced with the following:

**p. Personal and Advertising Injury:**

**(7) (a)** arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

**(b)** Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

**(1)** Infringement, in your "advertisement", of:

**(a)** Copyright;

**(b)** Slogan; or

**(c)** Title of any literary or artistic work; or

**(2)** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement.""[76]

The second major intellectual property exclusion addresses *Insureds In Media And Internet Type Businesses*. The rationale behind this exclusion is that an insured in one of the listed businesses is more appropriately insured against advertising injury under a separate

---

[75] JAFRUM_000115, CG 00 01 04, Page 6 of 15.
[76] JAFRUM_000397 (2013 Policy) JAFRUM_000567 (2012 Policy), Form SS 41 62 06 11, Page 1 of 2.

12

advertisers' liability policy handled by specialty underwriters. The exclusion does not apply with respect to three of the personal and advertising liability offenses that pose no greater an exposure for a media or Internet businesses than for any other organization: false arrest or imprisonment, malicious prosecution, and wrongful eviction.[77]

Prior to 2001, the exclusion applied to advertising, broadcasting and telecasting. It was taught as a radio, TV, newspaper and magazine exclusion. In 2001, ISO revised the exclusion to address e-commerce issues. With the growth of e-commerce, new types of businesses came into existence, that, like conventional advertisers and publishers, were highly exposed to advertising liability. Thus, the current exclusion also applies to Web site designers and various types of Internet-related businesses, subject to an exception in the exclusion's final paragraph, which describes various Internet activities (such as placing Web links) that, in and of themselves, are not considered to be in the business of advertising, broadcasting, publishing, or telecasting.

Mr. Keller was advised of the litigation from Amcor who owns the Gorilla Cycle trademark, and was told that State Farm defended Jafrum.[78] It appears, based on the testimony, that Amcor was a linking claim.[79] The State Farm, Catlin and Hartford policies all have similar wording related to linking claims.

**State Farm**, on Endorsement FE-6656, stated:

> "Under **BUSINESS LIABILITY EXCLUSIONS**, items 9., 16. and 17. Are replaced with the following:

---

[77] Before 1998, Coverage B contained separate definitions of personal injury and advertising injury. These three perils had formerly been included in only the personal injury definition, not in advertising injury. In 1998 ISO revised the definition to combine the two definitions to make the provisions less complicated. The exception for these three intentional torts became necessary so that this coverage would not be reduced.
[78] CI000100 – CI000101; Deposition of Jaffer Mohammed, 39:24 – 25.
[79] 30(b)(6) Deposition of Jaffer Mohammed, 105:21 – 24.

13

* * * * *

17. to **advertising injury** arising out of:

* * * * *

   h.  committed by an insured whose business is:

      (1) advertising, broadcasting, publishing or telecasting;

      (2) designing or determining content of web-sites for others; or

      (3) an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs a., b. and c. of **personal injury** under Section II Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting."[80]

The **Catlin** exclusion stated:

"**2.**  **Exclusions**

This insurance does not apply to:

* * * * *

   **j.**  **Insureds In Media And Internet Type Business**

"Personal and advertising injury" committed by an insured whose business is:

      (1) Advertising, broadcasting, publishing or telecasting;

      (2) Designing or determining content of web-sites for others; or

      (3) An internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not, by itself,

---

[80] Jaffer Mohammed Deposition Exhibit #3 (Page 28 of 231, exhibits).

14

considered the business of advertising, broadcasting, publishing or telecasting."[81]

The **Hartford** Policies stated:

**"B.   EXCLUSIONS**

    **1.   Applicable To Business Liability Coverage**

    This insurance does not apply to:

* * * * *

    **p.   Personal And Advertising Injury**

    "Personal and advertising injury":

* * * * *

    (8) Arising out of an offense committed by an insured whose business is:

        (a) Advertising, broadcasting, publishing or telecasting;

        (b) Designing or determining content of web-sites for others; or

        (c) An internet search, access, content or service provider.

    However, this exclusion does not apply to Paragraphs **a., b.** and **c.** of the definition of "personal and advertising injury" under the Definitions Section.

    For the purposes of this exclusion, the placing of frames, borders or links, or advertising, by you or for others, anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting."[82]

After analyzing the three policies, it is apparent that Charlotte Insurance procured commercial general liability insurance for intellectual property to the same extent as the State Farm policy.

---

[81] JAFRUM_000115, CG 00 01 04, Page 6 of 15.
[82] JAFRUM_000397 (2013 Policy) JAFRUM_000567 (2012 Policy).

15

### *Intellectual Property Coverage*

Jafrum is still unaware if trademark insurance is available.[83] Jafrum, in 2009, never specifically requested trademark infringement coverage.[84] Mr. Keller contends that he did not have any conversation with Mr. Mohammed about any sort of intellectual property coverage.[85]

There are two major exposures covered by intellectual property insurance. The first exposure concerns the costs to enforce patents, trademarks, or copyrights. This risk can be covered by infringement abatement insurance. The second exposure concerns costs to defend allegation that patents, trademarks, or copyrights have been violated. Trademark defense reimbursement insurance would cover this risk. Charlotte Insurance never represented that Jafrum had intellectual property coverage; only that Jafrum had personal and advertising injury coverage.[86]

Coverage, if procured, is based on a schedule of covered intellectual property appearing on the declarations page of the policy. Abatement coverage, defense reimbursement coverage or both can be procured. Both abatement and defense reimbursement policies require each of the individual trademarks covered be listed on the schedule along with the trademark number and the date on which the trademark was issued. A specific premium is charged for each individual trademark covered by the abatement or defense reimbursement policy. A trademark search by an attorney for each trademark is an underwriting requirement for both policies. There is a pretty lengthy underwriting process that can be time consuming.

Either type of policy comes with a serious price tag, as much as $50,000 for $1,000,000 of coverage. Either policy will contain a separate per claim limit and an aggregate limit for all claims

---

[83] 30(b)(6) Deposition of Jaffer Mohammed, 78:13 – 20; 79:8 - 13.
[84] 30(b)(6) Deposition of Jaffer Mohammed, 97:22 – 98:2.
[85] Deposition of Marcos Keller, 16:16 – 25.
[86] 30(b)(6) Deposition of Jaffer Mohammed, 159:12 – 16; 160:5 – 7.

during the policy period. These policies also contain a coinsurance provision, indicating that the insured will bear a stated percentage of each claim. Coinsurance ranges from a minimum of 10 percent to a maximum of 25 percent of each claim. Finally, both the abatement and defense reimbursement policies are written with a per claim self-insured retention, an amount that will be assumed by the insured on each claim. Retentions of $25,000 per claim are common.

## OPINIONS

I.    Charlotte Insurance exercised good faith and reasonable skill in advising and procuring the coverage for Jafrum.

In custom and practice, Charlotte Insurance had a responsibility to use the skill, care and diligence which a reasonable and prudent person engaged in the insurance business would use under similar circumstances.[87] An insurance agent need only to procure the insurance the customer requested. Insurance agents have no responsibility, and need not assume one, to procure insurance that the customer has not requested.[88] Charlotte Insurance acted in good faith and followed the instructions of Jafrum, their customer in procuring similar coverage to the State Farm policy.

Insurance agents in North Carolina, like the rest of the United States, rely on a customer to perform certain duties, just as the customer relies on the insurance agent to perform certain duties. The customer duties relied upon include:

1. Requesting the specific coverage desired, including, whether to insure a particular risk and the extent of coverage for that risk;

---

[87] See *Mayo v. Amer. Fire & Cas. Co.,* 282 N.C. 346 (1972).
[88] See *Bigger v. Vista Sales & Mktng., Inc.,* 505 S.E.2d891 (N.C. App., 1998); *Baggett v. Summerlin Ins. & Realty,* 554 S.E.2d 336 (N.C. 2001)

17

2. Determining which insurer(s) to use;

3. Determining which insurance agent(s) to use;

4. Completing applications or otherwise cooperate in the application process;

5. Reviewing the application;

6. After receiving the policy, ensuring the particular provisions are acceptable;

7. To read the policy, and in doing so, asking for an explanation of any confusing provisions, and asking the insurance agent to change any unacceptable provisions;

8. If coverage needs to be changed, informing the insurance agent and asking for changes; and

9. Asking the insurance agent to renew the policy.[89]

Jafrum failed to perform many of these responsibilities when it purchased their insurance program. A special relationship never existed between Charlotte Insurance and Jafrum because Charlotte Insurance never offered, nor did it ever agree, to perform any of these responsibilities for Jafrum. The record indicates that Charlotte Insurance procured the requested coverage, which was coverage similar to that provided in the 2009 State Farm policy. The record indicates that Charlotte Insurance not only procured the requested coverage, it also provided broader coverage with Hartford, and at an annual premium in 2011 that generally fit within Jafrum's requested price point.

---

[89] Clarence E. Hagglund, J.D., *Insurance Producer Liability: In Plain Language,* (Minneapolis: Common Law Publishing, Inc., 1991).

18

In custom and practice, Charlotte Insurance had a responsibility to use the skill and care which a reasonable and prudent person engaged in the insurance business would use under similar circumstances. In doing so, Charlotte Insurance acted in good faith and followed the instructions of Jafrum, their customer. The record does not indicate that Jafrum ever requested or paid the premium for trademark infringement coverage. Further, Jafrum testified that it was not aware that trademark infringement coverage was available. If Jafrum had requested the coverage, completed the applications and paid the premium, a quotation for coverage may have been obtained. However, such a quotation would have included an annual premium exponentially higher than any amount Jafrum had ever paid, or expected or wanted to pay, for liability coverage.

Based on the responsibilities and actions of both Charlotte Insurance as the insurance agent, and Jafrum as the insured, Jafrum could not justifiably have expected or relied on Charlotte Insurance to take affirmative action to procure a policy that Jafrum did not know existed and did not request, or for which no premium was paid.

_R. Bryan Tilden_
R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

19

*Curriculum Vitae*
*of*
*R. Bryan Tilden*
526 Red Gate Road
Pittsboro, North Carolina 27312-7934
*Office:* 919.542.1042 • *Fax:* 919.542.6255 • *E-mail:* tilden@mindspring.com

**EDUCATION:**

**Senior Claim Law Associate,** 2008
AMERICAN EDUCATIONAL INSTITUTE, INC.
Basking Ridge, New Jersey

**Chartered Financial Consultant,** 1983
THE AMERICAN COLLEGE
Bryn Mawr, Pennsylvania

**Associate in Loss Control Management,** 1983
INSURANCE INSTITUTE OF AMERICA
Malvern, Pennsylvania

**Associate in Risk Management,** 1982
INSURANCE INSTITUTE OF AMERICA
Malvern, Pennsylvania

**Chartered Life Underwriter,** 1982
THE AMERICAN COLLEGE
Bryn Mawr, Pennsylvania

**Chartered Property Casualty Underwriter,** 1980
THE AMERICAN INSTITUTE FOR PROPERTY AND LIABILITY
UNDERWRITERS
Malvern, Pennsylvania

**Certified Insurance Counselor,** 1978
SOCIETY OF CERTIFIED INSURANCE COUNSELORS
Austin, Texas

**HONORS/ACTIVITIES:**

Continuing Professional Development, Society of Chartered Property
Casualty Underwriters, 2016 - 2018

Grading Panel Member, The American Institute for Property and
Liability Underwriters

Grading Panel Member, Insurance Institute of America

National Faculty Member, Society of Certified Insurance Counselors

Faculty, ACORD Power of Change Workshop, 1995 to present

Faculty, Independent Insurance Agents Virtual University,
commentator to ISO, AAIS and ACORD

Ernest F. Young Education Award, 1988

North Carolina Independent Agent of the Year, 1989

Frequent contributor the *The John Liner Letter*
articles on Business Income, CGL, Auto, Risk Management

Reviewer, various CPCU and Insurance Institute textbooks

**MEMBERSHIPS:**     International Association of Arson Investigators
Society of Certified Insurance Counselors
Society of Chartered Property Casualty Underwriters
Society of Claims Law Associates
Society of Financial Service Professionals

**LICENSES:**     Property and Liability Agent, North Carolina, New Jersey
Life and Health Agent, North Carolina, New Jersey
Medicare Supplement and Long Term Care Agent, North Carolina

**EXPERIENCE:**     April 1997 to Present
**Training and Consulting**
Tilden & Associates
Pittsboro, North Carolina

September 1995 to March 1997
**Director of Technical Affairs**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

March 1990 to August 1995
**Director of Education**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

September 1983 to March 1990
**Account Executive**
Chapel Hill Insurance Agency, Inc.
Chapel Hill, North Carolina

September 1979 to July 1983
**Vice President**
Thomas Rutherfoord, Inc.
Roanoke, Virginia

December 1978 to September 1979
**Account Executive**
Marsh & McLennan, Inc.
Washington, DC

July 1974 to December 1978
**Account Executive**
Herb Holland Company, Inc.
Chapel Hill, North Carolina

**PUBLICATIONS:**     The CPCU Society. "A Guide to the CGL Aggregate Limits",
http://www.cpcusociety.org/learning/campus/how.shtml , 1999
The CPCU Society, "A Guide to the Motor Carrier Act",
http://www.cpcusociety.org/learning/campus/how.shtml. 1999
The CPCU Society, "A Guide to Value Reporting Form",
http://www.cpcusociety.org/learning/campus/how.shtml. 1999

R. Bryan Tilden, *1999 Business Auto Policy, Changes and Issues* (Albany: Professional Insurance Agents, 1999)

----, *2000 Commercial Property Changes* (Malvern: The CPCU Society, 2000)

----, *2000 Homeowners Policy Changes* (Malvern: The CPCU Society, 2000)

----, *2001 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2001)

----, *2001 Business Automobile Policy Changes* (Pittsboro, NC: Tilden and Associates, 2001)

----, *2002 Commercial Property Changes* (Malvern: The CPCU Society, 2002)

----, *2004 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2004)

----, *2007 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2007)

---- *2008 Commercial Property Changes* (Malvern: The CPCU Society, 2008)

----, *2010 Automobile Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2011 Homeowners Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2012 Commercial Property Policy Changes* (Malvern: The CPCU Society, 2013)

----, *2013 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2013)

----, *Additional Insured* (Austin: Society of Certified Insurance Counselors, Inc., 1996, 2005, 2013; Malvern: The CPCU Society, 1999, 2001, 2004, 2005, 2013)

----, *Advanced Business Income* (Malvern: The CPCU Society, 1990 – 2016)

----, *Advanced Inland Marine* (Malvern: The CPCU Society, 2000)

----, *Advanced Pollution Liability* (Malvern: The CPCU Society, 1999 - 2012)

----, *Arson and the Insurance Contract* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 2004, 2012)

----, *Bonus Life and Non-Qualified Deferred Compensation Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Budgeting* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1995)

R. Bryan Tilden and Donald Malecki, *Builders Risk, Wrap-Ups and Course of Construction* (Malvern. The CPCU Society, 2006)

R, Bryan Tilden, *Business Automobile Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1997, 1999, 2002, 2004, 2005, 2006, 2010, 2013)

----, *Business Owner's Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990 – 2002, 2010, 2013)

----, *Claims Handling* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Closing Gaps in Property Insurance* (Malvern: The CPCU Society, 1999, 2007, 2015)

----, *Commercial Account, The* (Malvern: The CPCU Society, 1999, 2001, 2005)

----, *Commercial Crime Program* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1991, 1992, 1999, 2000, 2006, 2013; Malvern: The CPCU Society, 2000, 2006, 2009, 2013)

----, *Commercial General Liability Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1992, 1994, 1996, 1997, 1998, 1999, 2001, 2004, 2007, 2013)

----, *Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Commercial Property Causes of Loss Forms* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Contract Bonds* (Pittsboro, NC: Tilden and Associates, 1999)

R. Bryan Tilden and Donald Malecki, *Contractual Risk Transfer* (Malvern. The CPCU Society, 2005)

R. Bryan Tilden, *Director's and Officer's Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1997; 2002 Malvern: The CPCU Society, 1998, 2000, 2002)

----, *Disability Income and Long Term Care Insurance* (Pittsboro, NC: Tilden and Associates, 2006)

----, *Employee Leasing – The New CGL.* Counselor C93 #6 December (1993): 1-4

----, *Employment Related Practices* (Pittsboro, NC: Tilden and Associates, 1999, 2011, 2015)

----, *Endorsements to the Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Essentials of Legal Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1995)

----, *Essentials of Life Insurance* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Estate Planning* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Estate Planning Techniques, Gifts, Trusts and Family Limited Partnerships* (Pittsboro, NC: Tilden and Associates, 2000)

R. Bryan Tilden and Donald Malecki, *Evolution of the CGL,* (Malvern. The CPCU Society, 2007)

R. Bryan Tilden, *Excess Liability and Commercial Umbrella Policies* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1995, 1997, 2013)

----, *Flood Insurance*, (Austin: Society of Certified Insurance Counselors, Inc., 1998)

----, *Garage Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1998, 2006)

----, *Hidden Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1995, 1997, 2000; Malvern: The CPCU Society, 1998, 2004, 2010, 2013)

----, *Homeowner's Policy* (Pittsboro, NC: Tilden and Associates, 1998, 2001, 2011)

----, *Homeowner's Tricks and Traps* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1993, 1997, 2001, 2013)

----, *How to Determine the Financial Stability of an Insurance Company* Agents Journal Spring (1985) 18 - 19

----, *Human Resources* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1996)

----, *Insurance Fraud* (Pittsboro, NC: Tilden and Associates, 2001)

----, *Insurance Statute and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Insuring Contractors* (Malvern: The CPCU Society, 1998, 1999, 2004, 2007, 2013)

----, *Insuring Defective Construction* (Malvern: The CPCU Society, 2002, 2004, 2007, 2013; Austin: Society of Certified Insurance Counselors, 2002, 2004, 2007, 2013)

----, *Insuring the E-Commerce Account* (Malvern: The CPCU Society, 2000 – 2013)

----, *Insuring the In Home Business* (Austin: Society of Certified Insurance Counselors, 1998)

----, *Insurance Valuation Problems* (Malvern: The CPCU Society, 1997 – 2013)

----, "It's a Crime Not to Insure! Use New Crime Forms for the Best Coverage," *Resources* (The National Alliance for Insurance Education & Research), (Spring 2001), pp. 10-13.

----, *Law and the Life Insurance Contract* (Pittsboro, NC: Tilden and Associates, 2002)

----, *Leased Properties Exposures* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1997, 2005; Malvern: The CPCU Society, 1998, 2001, 2005, 2013)

----, *Liability Issues and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998)

R. Bryan Tilden and Donald Malecki, *Malecki and Tilden on the CGL,* (Malvern. The CPCU Society, 2003, 2004, 2005)

R. Bryan Tilden, *Medicare Supplement and Long Term Care* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991, 1992)

----, *Mergers, Acquisitions and Joint Ventures* (Malvern: The CPCU Society, 2001; Austin: Society of Certified Insurance Counselors, Inc., 2002, 2013)

----, *More Personal Lines Questions and Answers* (Pittsboro, NC: Tilden and Associates, 1997)

----, *N.C. Insurance Statutes and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Personal Auto Policy* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1990, 1993)

----, *Personal Auto Policy* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Personal Lines Questions and Answers* (Malvern: The CPCU Society, 1997, 1998, 2012)

----, *Personal Lines, Troublesome Problem Areas* (Indianapolis: Independent Insurance Agents of Indiana, 1997, 1998)

----, *Pollution Liability Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1998, 2012)

----, *Pollution and Environmental Liability Coverages* (Malvern: The CPCU Society, 1999, 2012, 2015)

R. Bryan Tilden and John P. Young, *Pre-Licensing Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1988, 1993)

R. Bryan Tilden, *Professional Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1994, 1996, 1998)

----, *Problems and Solutions in Buy-Sell Agreements* (Pittsboro, NC: Tilden and Associates, 1998).

----, *Products and Completed Operations* (Malvern: The CPCU Society, 1999)

----, *Properly Insuring Churches, Clubs, Civic Groups and Other Not-For-Profit Organizations* (Austin: Society of Certified Insurance Counselors, Inc., 1991, 1998, 2001)

----, *Property & Liability Innovations and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 1999, 2001)

----, "Puzzled About Commercial Auto?" *Resources* (The National Alliance for Insurance Education & Research), (Fall/Winter 2001), pp. 8-9.

----, *Rental Car Exposures and Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1990, 1992, 1999)

----, *Shared Ownership of Property* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1990, 2001)

----, *Small Employer Group Benefits* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Solving Troublesome Liability Issues* (Austin, Society of Certified Insurance Counselors, Inc., 2016)

----, *Solving Troublesome Property Issues* (Austin, Society of Certified Insurance Counselors, Inc., 2016)

----, *Split Dollar Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Time Element Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1996, 2001, 2008, 2012)

----, *Tips, Tricks and Traps of the CGL* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1998, 1999, 2012; Malvern: The CPCU Society, 2000, 2012)

----, *Toxic Mold, Where Is The Coverage?* (Malvern: The CPCU Society, 2003, 2004, 2008, 2010, 2013)

----, *Umbrella and Excess Liability* (Malvern, The CPCU Society, 2004, 2013)

----, *Underwriting Workers Compensation* (Pittsboro, NC: Tilden and Associates, 2003)

----, *Utilizing the New Commercial Coverages* (Albany: Professional Insurance Agents, 2003)

----, *Will the Policy Pay for Rebuilding?* Professional Agent February 1998: 24 - 27

----, *Workers' Compensation* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1997, 2012)

----, *Workers' Compensation: Treating the Exposure* (Malvern: The CPCU Society, 2000)

----, *Workers' Compensation: Underwriting* (Malvern: The CPCU Society, 2000)

**CASES PAST 4 YEARS:**   *Colony Insurance Company v. Charles Peterson; Evergreen Composite Technology, LLC, and Randolph Bank and Trust Company,* 1:10-cv-581, United States District Court for the Middle District of North Carolina, Greensboro Division.

*Lawrence D. Guessford v. Pennsylvania National Mutual Casualty Insurance Company* 1:12-cv-00360-JAB-LPA, United States District Court for the Middle District of North Carolina.

*C. B. Fleet Company, Inc. v. Colony Specialty Insurance Company,* 1:11-cv-00375, United States District Court for the Northern District of Ohio, Eastern Division.

*Opry Mills Mall, Ltd., et al v. Arch Insurance Company, et al,* 10-1504-IV, Chancery Court for Davidson County, Tennessee.

*Hospitality Enterprises, Inc., et al, v. Westchester Surplus Lines Insurance Company, et al,* 10-12413-D, Civil District Court for the Parish of Orleans, Louisiana.

*Menno Pennink, et al v. Underwriters at Lloyds, et al,* 11-CVS-05555, Superior Court for the County of Durham, North Carolina.

*Brent and Brunette Myers v. First Citizens Bank & Trust Company,* 12 CVS 08569, Superior Court for the County of Wake, North Carolina.

*Orleans Parish School Board, et al v. Lexington Insurance Company and RSUI Indemnity Company, et al,* 2006-7342, Division L, Section 6, Civil District Court for the Parish of Orleans, State of Louisiana.

*Otto Industries North America, Inc., v. The Phoenix Insurance Company,* 3:12-CV-717, United States District Court for the Western District of North Carolina, Charlotte Division.

*Pleasant Valley Baptist Church v. Church Mutual, et. al.,* 12-26503-CZ, Circuit Court for the County of Livingston, Michigan.

*MacMurray College v. Educational & Institutional Ins. Administrators, Inc.,* Arbitration No. 51 195 Y 01446 12, American Arbitration Association, Chicago, Illinois.

*Rolf's Patisserie, Inc. v. The Rockwood Company,* 12-L-1063, County Department, Law Division, Circuit Court of Cook County, Illinois.

*Loretta A. Scott v. Portell, et al,* 11SL-CC00239, Circuit Court for the County of St. Louis, Missouri.

*Parkers Farm Acquisition, LLC, v. Associated Insurance Agents, Inc., and Jeffrey R. Mass,* 27-CV-13-12678, District Court for the Fourth Judicial District, County Of Hennepin, Minnesota.

*Daniel Island Riverside Developers, LLC, et al, v. The Oaks at Rivers Edge Property Owners Association, Inc., et al,* 2010-CP-08-4318, In the Court of Common Pleas, Fifteenth Judicial Circuit, County of Berkeley, South Carolina.

*Philway Products, Inc. v. Berkley Mid-Atlantic, et al,* CV-2012-12-6749, Summit County Court of Common Pleas, Ohio.

*Colony National Insurance Company v. Sorenson Medical Inc., et al,* 2:10-cv-74-WOB, United States District Court for the Eastern District of Kentucky, Northern Division at Covington.

*Bowlers Alley, Inc. d/b/a Eastland Bowling Center v. The Cincinnati Insurance Company,* 2:13-cv-13804-PDB-MJH, United States District Court for the Eastern District of Michigan, Southern Division.

*Insurance Commissioner of Puerto Rico v. Guardian Insurance Company, et al,* Case Number CM-2014-40E, In The Office of the Puerto Rico Insurance Commissioner.

*Waldorf Condominium Association, Inc. v. Lexington Insurance Company, et al,* Docket L2877-13, Law Division Ocean County, Superior Court of New Jersey.

*James Bosek, et al v. Auto-Owners Insurance Company and Larson Insurance Services, Inc.,* 21-CV-12-1821, County of Douglas District Court, Seventh Judicial District, State of Minnesota.

*Frank L. Connor v. State Farm Fire and Casualty Company,* 4:14-cv-00790, United States District Court, Western District of Missouri.

*Kelly Schofield, et al, v. Argonaut Insurance Company, et al,* 14-cv-103F, United States District Court for the District of Wyoming.

*Stacey Allen Volden v. Monson & Company, Inc., et al.,* 120903279, In the Third Judicial District, Salt Lake County, State of Utah.

*The Pavlec Family Partnership, L.P., v. Nationwide Mutual Insurance Company,* 4-14-cv-00477, United States District Court, Eastern District of Missouri.

*Eric LaFolette, et al, v. Liberty Mutual Fire Insurance Company,* 2-14-cv-04147, United States District Court, Western District of Missouri, Central Division.

*East Bridge Loft Property Owners Association, Inc., et al, v. Crum and Forster Specialty Insurance Company,* 2:14-CV-2567, United States District Court for the District of South Carolina, Charleston Division.

*USI MidAtlantic, Inc. v. Howard G. Wilson, et al,* July Term, 2014. No. 02746, Philadelphia County Court of Common Pleas, Philadelphia, Pennsylvania.

*Standby Technical Services, Inc., et al, v. F. & M. Agency, Inc., et al.,* 14-cv-01857, United States District Court, District of Minnesota.

*Wayne J. Griffin Electric, Inc. v. Travelers Property Casualty Company of America,* 1:13-cv-00882, United States District Court, Middle District of North Carolina.

*F. H. Paschen, et al, v. Hiscox, Inc., et al,* 2:13-cv-05842, United States District Court, Eastern District of Louisiana.

*Liberty Mutual Fire Insurance Company v. The Clemons Coal Company, et al,* 2:14-cv-02332, United States District Court for the District of Kansas.

*Park Reserve, LLC v. Peerless Insurance Company, et al,* 4:14-00763, United States District Court for the Western District of Missouri, Western Division.

*APM, LLLP v. TCI Insurance Agency, Inc.,* 09-2014-CV-02885, District Court for the County of Cass, East Central Judicial District, North Dakota.

*Michael McDonald, et al, v. Selective Insurance Company of South Carolina, et al,* 1422-CC00687, In the Circuit Court of St. Louis City, State of Missouri.

*Harbour Yacht Club and Marina, LLC and Harbour Yacht Club and marina sales and Service v. North American Specialty Insurance Company and Liberty Insurance Services,* OCN-L-2737-13, Superior Court of New Jersey, Ocean County.

*Kevin Johnson, et al, v. City of Alexandria, <u>Arch Insurance Company</u>, et al,* 247,208 Div. Ninth Judicial District Court, Parish of Rapides, State of Louisiana.

*William A. Strickland, et al, v. <u>Nationwide Mutual Insurance Company</u>,* 4:14-cv-01516-DDN, United States District Court, Eastern District of Missouri.

*Fresca Foods, Inc., v. Certain Underwriters at Lloyd' s London, <u>True North First Mainstreet, LLC</u>, et al,* 2014-cv-31415, In the District Court, Boulder County, Colorado.

*Tensas Water Distribution Association v. <u>Arch Insurance Company</u>,* 3:14CV1787, United States District Court, Western District of Louisiana, Monroe Division.

*Selective Insurance Company, et al, v. Auto-Owners Insurance Company and <u>Progrowth Insurance Agency, Inc.</u>,* 27-CV-15-8107, District Court of Minnesota, County of Hennepin, Fourth Judicial District.

*Mark Scott and Merrilee Scott v. <u>LifeSecure Insurance Company</u>,* 2:15-cv-00197-CW-DBP, United States District Court, District of Utah, Central Division.

*Advanced Imaging Partners. Inc., et al v. <u>Edgewood Partners Insurance Center, dba EPIC, et al</u>,* SC120707, Superior Court of the State of California, County of Los Angeles, West District.

*<u>Raieigh OB/GYN Centre, P.A., et al</u>, v. Allied World Insurance Company (U.S.) Inc., et al,* 5:15-CV-00388-BO, United States District Court, Eastern District of North Carolina, Western Division.

*Thomas Jackson, et al, v. <u>Century Mutual Insurance Company</u>,* 14-cvs-7263. Superior Court for Forsyth County, North Carolina.

*Mark Williams v. <u>Soderholm Financial Services</u> v. White Bear Lake Insurance Company,* 26-CV-15-260, District Court of Minnesota, County of Grant, Eighth Judicial District.

*Barbara Balsamello v. <u>Allstate Life Insurance Company of New York, Inc., et al</u>,* Index No.: 502320/2012, Supreme Court of The State of New York, County of Kings.

*<u>Pamela Shore</u> v. State Farm Mutual Insurance Company,* 4:16-CV-00301, United States District Court, Western District of Missouri.

*Seneca Insurance Group, Inc., v. <u>Hamby & Aloisio, Inc.</u>,* 1:16-CV-00174-WSD, United States District Court, Northern District of Georgia, Atlanta Division.

*<u>Heather Wingo</u> v. Farmers Insurance Company, Inc.,* 4:16-cv-00646-JTM, United States District Court, Western District of Missouri, Western Division.

*RSUI v. New Horizons Kids Quest, Inc.,* 16-CV-0028 (RHK/TNL), United States District Court, District of Minnesota.

*The GWSPI Company, Trustee of the Jeffrey P. Blanchard 2013 Family Trust v. Life Insurance Company of the Southwest,* Cause No. 2015CI06197, District Court Bexar County, Texas, 224th Judicial District.

*Arch Insurance Company v. Outreach Community Development Corporation,* 15-721-JWD-SCR, United States District Court, Middle District of Louisiana.

*Gerald and Marsha Chanan v. Willis Towers Watson, Inc.,* 2016 L 004531, Circuit Court of Cook County, Illinois County Department, Law Division.

*Berkley Regional Specialty Insurance Company v. Mel Foster Co. Insurance, Inc., et al,* 2:15-cv-00027-HEA, United States District Court, Eastern District of Missouri, Northern Division.

*Perdomo & Company, LLC v. The Blood Center and Construction South, Inc. v. John M. Brown Insurance Agency, Inc.* 2013-9542, Section 10, Civil District Court, Parish of Orleans, State of Louisiana.

*Belmont Confections, Inc. v. Century Insurance Consultants, Ltd. et al,* GD-12-008129, In the Court of Common Pleas of Allegheny County, Pennsylvania.

*BNSF Railway Company, v. Morrison Grain & Ag Services, Inc. and Mid-Continent Casualty Company,* CIV-15-1066-F, United States District Court, Western District of Oklahoma.

*528 North Avenue, LLC, v. Ronald Diskin Associates Corp., et al,* MRS-L-2323-15, Superior Court of New Jersey, Morris County, Law Division.

*National Union Fire Insurance Company of Pittsburgh, PA., v. Seattle School District No. 1,* 2:16-CV-01534-TSZ, United States District Court, Western District of Seattle at Seattle.

*Lion Petroleum, Inc., v. Paco Corporation, et al,* 15SL-CC00888, Div. 18, Circuit Court of St. Louis County, State of Missouri.

*Occidental Fire & Casualty Company of North Carolina v. Interstate Risk Placement, Inc., et al,* 16-CV-1174, United States District Court, District of Minnesota.

*Gemini Insurance Company and Berkley Program Specialists, LLC, v. Pelican General Insurance Agency,* 16-CV-02780, United States District Court, Northern District of Illinois, Eastern Division.

*Walker Risk Analysis Management & Services Company v. FKI Industries and Wells Fargo Insurance Services USA, Inc.,* 12 L 161, In the Circuit Court of the 18th Judicial Circuit, DuPage County, Wheaton, Illinois.